Compiler

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE GOVERNMENT OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> HELENE TORRES and EVELYN O'KEEFE, in their capacities as CO-ADMINISTRATRIXES OF THE ESTATE OF JOSE MARTINEZ TORRES, and THE ESTATE OF JOSE MARTINEZ TORRES, <br><br> Defendants. | CIVIL CASE NO. CV 1124-09 <br><br> **DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 30th day of November, 2012, for hearing on the Government's Motion for Summary Judgment on the Third Amended Complaint and the Defendants' Cross-Motion for Summary Judgment. Assistant Attorney General William Bischoff represented the Government, and Attorney Joseph Razzano represented the Defendants. For the reasons set forth below, the Court grants in part the Government's Motion for Summary Judgment on the Third Amended Complaint, denies in part the Defendants' Cross-Motion for Summary Judgment, dismisses in part the causes of action in this case, and remands this controversy to the GALC for further proceedings.

## I. Factual and Procedural Background

On September 20, 2006, the Guam Ancestral Lands Commission ("GALC") held a hearing on the Defendants' ancestral lands claim. During that hearing, the GALC rendered an oral decision to grant a conditional deed to the Defendants. The GALC delegated to the Defendants' attorneys the task of reducing its oral ruling to writing and drafting the deed. The attorneys drafted a deed and the GALC executed the deed as drafted by the Defendants' attorneys.

The GALC's oral decision came in the form of a motion by Commissioner Mark Charfauros, as reflected in the following excerpt from the transcript of the hearing:

MR. CHARFAUROS: I'd like to ask the family to clarify something for the commission. What is the pleasure of the – what is the request before this commission at this point in time? So I'll make sure that whatever motion that we're going to make would be clear. So can the – a representative of the family state to the commission, what is its official request before us?

MR. MANTANONA: In which you – if I may, for the Commissions pleasure. Your Honor, at this point, we are asking that the commission award, recognize the claims of the heirs of the Jose Torres Martinez – Martinez Torres, for the lots as contained in 2531 and 1540.

Today, recognized by Ancestral Lands Commission on their own documentation as Lots AL002, Lot AL002-1, and Lot AL002-2. We believe that this will extinguish all claims that the family have to any and all properties inside the Ancestral Lands inventories.

MR. CHARFAUROS: Okay, all right. Madam Chair? If there's no other questions by the other commission member, I'd like to make a motion and my motion would be basically to be in line with the request of the family to recognize the claim to the estate of the lots mentioned herein on the record, which would also extinguish all claims to the Duarte Estate. And also that this be a conditional deed that you still have to go to the courts and go through the regular court proceedings to – and correct me if I'm wrong, is that going to the court proceedings to review this claim and the court will make the final judgment on the claim.

MR. YANZA: That is correct Mr. Chairman. On behalf of the estate, neither I myself, Mr. Mantanona or Mr. Razzano or Mrs. O'Keefe can declare that we hereby terminate all future claims to ancestral lands. But, as we saw fit best for the estate, we are willing to go before the probate court and the probate estate of Mr. Torres and request the court that they, the Court, approves the receipt of these ancestral lands and approve the final termination of future claims within the inventory of the commission.

MR. CHARFAUROS: And understand this, this is a conditional deed and if the Court comes back that says, that you have absolutely no claim to this property, this property comes right back into the inventory of the Ancestral Lands Commission and that we are not going to rehear this

case again. Unless you guys have convincing evidence that has not been reviewed by the Court to rehear the case. Do you understand exactly what this motion is?

MR. YANZA: Yes.

MR. MANTANONA: Yes, we do.

MR. CHARFAUROS: All right. So that's my motion.

MR. MANTANANE: I second.

MS. [*sic*] CHARFAUROS: Seconded by the –

MS. ORLINO: Okay. The motion has been second and now we're going to be voting.

MR. CHARFAUROUS: Yeah. It wasn't there. There's an extinguishment.

MS. ORLINO: Yeah.

MR. CHARFAUROS: That this extinguish the Duarte claim.

MS. ORLINO: All future.

MR. CHARFAUROS: It's a conditional motion.

MR. ECLAVEA: That's just for the inventory we have? Or is that for everything?

MR. CHARFAUROS: For everything. Everything.

MR. ECLAVEA: So does the family understand that?

MR. YANZA: Yes.

MR. MANTANONA: For present and future. We believe that we represent about 90 percent of the heirs, of course there's 10 percent so we can't speak for those 10 percent at this point. But we believe that the recommendation from the estate will be that we acknowledge the receipt and terminate all future interest.

MR. CHARFAUROS: Yeah. And understand, I'm not asking the family for permission for this extinguishment. My motion is not asking for permission, I'm making this motion. And this motion is to extinguish this claim and basically, it's up to the Courts and if the Court see fit that this motion is inappropriate then the Courts can rule against that and if the Court sees fit that this claim is invalid, this property would come back to the inventory of the Ancestral Lands Commission. But basically the Court is going to be the final say so. Do you understand that motion?

MR. MANTANONA: Yes.

MR. YANZA: Mr. Commissioner? Just to clarify.

MR. CHARFAUROS: Yeah.

MR. YANZA: This present motion on the floor, this would be a conditional transfer of the properties so long as the court approves it and once the court approves it –

MR. CHARFAUROS: Yes. In other words, where it's a conditional deed that we're giving you. You still have to go to the courts and – if the courts comes back and say yes –

MR. YANZA: Okay. We understand that. We accept that.

MS. ORLINO: And then it's going to not come before this commission again?

MR. MANTANONA: Right. Yeah.

MR. YANZA: No, no. If the court approves of the transfer –

MS. ORLINO: Then it's a done deal.

MR. CHARFAUROS: Then it's your then –

MS. ORLINO: It's a done deal, yeah.

MR. YANZA: And then the condition would be satisfied?

MR. MANTANANE: Yeah, right.

MR. CHARFAUROS: If the court rules against it, then it comes – that property comes back into –

MR. ECLAVEA: Into our inventory.

MR. YANZA: And the transfer will be ineffective?

MR. MANTANANE: Right.

MR. CHARFAUROS: Yes.

MS. ORLINO: Yeah, that's why the extinguishment is there to let you know.

MR. YANZA: Yes.

MS. ORLINO: Okay?

MR. CHARFAUROS: So we are approving the – and my motion is to approve it on the condition that it goes to the court. All right?

MR. ECLAVEA: Okay, we're voting.

The motion passed unanimously. The Defendants' attorneys drafted the language of the deed condition, which read:

This Quitclaim Deed and the effective transfer of the Property is conditioned on the administrator/trix petitioning the probate court to approve the Jose Martinez Torres Estate's receipt of the Property and to approve the Jose Martinez Torres Estate's permanent extinguishment and termination of all claims to all other properties held by the Guam Ancestral Lands Commission formerly known as As Ukkudo or Estates 2531 and 1540.

The deed was executed by the GALC on October 17, 2006.

The GALC issued its Final Written Decision and Order on the Defendants' claim on December 22, 2006. The last paragraph of the Final Written Decision and Order reads as follows:

The Commission also hereby directs the Chairperson and the Secretary of the Commission to condition the return of the properties to the Estate that the Estate shall request the probate court of the Jose M. Torres Estate to accept the return of the properties in exchange for the Estate terminating all future claims against the Commission for the return of the unsurveyed remaining portions of Estate 2531 and the unsurveyed remaining portions of Estate 1540.

On June 12, 2007, the Defendants petitioned in Superior Court Probate Case Number PR 0220-50 for a court order confirming the satisfaction of the deed condition. On August 30, 2007, Judge Elizabeth Barrett-Anderson, sitting in probate, held a hearing on the matter, and on August 31, 2007, Judge Barrett-Anderson issued an order confirming the satisfaction of the deed condition. On March 6, 2008, the Government sought to intervene in PR 0220-50 for substantially the same reasons it advances in the present case, which was filed in 2009.

The Government claims that the Defendants' attorneys drafted the language of the deed condition incorrectly, in such a way that it did not accurately reflect the GALC's oral decision. The parties agree that the GALC intended the conditional language to require that the Defendants secure some form of court approval of the deed. The central dispute in this case is the question of what specific type of court approval the GALC intended the Defendants to secure. The Government argues that the GALC intended to have the Superior Court adjudicate the validity of the Defendants' ancestral claim. The Defendants claim that the GALC merely

intended to have a Probate Court approve the extinguishment of the Defendants' future claims against the GALC.

The Government brought this lawsuit requesting several forms of relief. The Government asks reformation of the deed language, so that it accurately reflects the oral decision rendered by the GALC at the September 20, 2006 hearing. The Government also requests that the Court a judgment on the merits of the Defendants' ancestral lands claim in the form of a declaratory judgment. Finally, in light of the sale of the underlying property by the Defendants to an apparent good faith third party purchaser, the Government requests that the Court impose a constructive trust in its favor on the proceeds received by the Defendants from the sale.

The Government has moved for summary judgment. The Defendants oppose, and have cross-moved for summary judgment.

## II. Summary Judgment Standard

Summary judgment on an issue should be granted when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. *Iizuka Corporation v. Kawasho International (Guam), Inc.*, 1997 Guam 10 ¶ 7. The initial burden is on the moving party and the court must review the facts in the light most favorable to the non-moving party. *Id.* at ¶ 8. However, if the movant can demonstrate that there exists no genuine issue of material fact, the non-movant cannot merely rely upon the assertions contained in the complaint, but must produce significant probative evidence showing that there is a genuinely disputed issue of material fact that must be determined at trial. *Id.*

A genuine issue exists when there is "sufficient evidence" establishing a factual dispute requiring resolution by a fact-finder. *Id.* The factual dispute must concern a "material fact." *Id.*

Whether a fact is material is determined by the governing substantive law; if the fact may affect the outcome, it is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Rule 56, the moving party carries the burden of showing the court the relevant information which it believes demonstrate the absence of an issue of material fact. The moving party is not required to negate each element of the non-moving party's case. Rather, the moving party satisfies and discharges its burden by establishing the absence of evidence to support the non-moving party's case. *Kim v. Hong*, 1997 Guam 11 ¶ 6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, there can be no "genuine issue of material fact" if there is a complete failure of proof concerning an essential element of a party's case, since such failure renders all other facts immaterial. *Id.* at 323.

### III.  Defendants' Evidentiary Objections

The Defendants make a number of objections to the Government's submissions of GALC hearing transcripts and recordings in support of its motion. For the reasons set forth below, the Court overrules the Defendants' objections.

### A.  Parol Evidence

The Defendants argue that the language of the deed is unambiguous and that the parol evidence rule should therefore prohibit the Court from considering evidence outside the four

corners of the deed in discerning the GALC's intent.[1] Guam's parol evidence rule, 6 GCA § 2511, expressly provides that extrinsic evidence may be considered "[w]here a mistake or imperfection of the writing is put in issue by the pleadings[.]" The central allegation in this case is that there was a mistake or imperfection in the language of the deed. The parol evidence rule also, by its plain terms, "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in § 2515 [Circumstances to be Considered], or to explain an extrinsic ambiguity, or to establish illegality or fraud." The Government's proffered evidence relates to the circumstances under which the deed was executed, and the Government has alleged fraud in this case. The parol evidence rule therefore does not bar the consideration of extrinsic evidence in this case, and the Court rejects the Defendants' parol evidence argument.

## B. Best Evidence, Completeness, Hearsay

The Defendant also make a number of objections based on the best evidence rule, the rule of completeness, and the rule against hearsay.

Dispositive of these objections is the maxim that evidence need not be presented in trial-admissible form on summary judgment. In evaluating whether evidence can be considered on summary judgment, the key question for the Court is whether the underlying factual content of the evidence could be presented in some admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (hearsay objection to personal diary overruled on summary judgment because factual allegations in diary could be presented as first person testimony at trial); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (best evidence rule objection overruled on summary judgment because underlying facts would be admissible).

---

[1] Guam's parol evidence rule, 6 GCA § 2511, by its terms applies to "deeds and wills as well as contracts between parties."

At trial on the issue of what the GALC meant by its oral decision rendered at the September 20, 2006 hearing, the Court would not hesitate to admit and allow the factfinder to consider transcripts and recordings of the hearing. The probative value of the underlying facts would obviously vastly outweigh any potential prejudice. Accordingly, on summary judgment, the Court overrules the Defendants' technical objections to the form in which the underlying facts have been presented to the Court.

In light of the Defendants' best evidence and completeness objections to the hearing transcript, the Court must also note that it is distressed by the Defendants' strenuous objections to the Government's admittedly tardy submission of the transcript recording during the pendency of summary judgment, and the Defendants' concomitant demands that the Government's counsel be sanctioned. The traditional remedy for evidentiary incompleteness is introduction of complete evidence; the rule intends to broaden, not to narrow, the scope of admissibility. *See, e.g., Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988). Yet, rather than assenting to the introduction of the audio recording, which would presumably convey accurately the "flavor" that the Defendants argued was missing from the transcripts, the Defendants pursued the obscurantist strategy of objecting to the recording as well. This troubling approach and the fervor with which the Defendants have pursued it have done little for their cause.

## IV. Administrative Reconsideration

The Defendants argue that this lawsuit is a *de facto* effort by the GALC to revisit its decision. This is a mischaracterization of the nature of this case. The GALC does not seek to reconsider its decision; it merely seeks to amend the language of the deed to reflect accurately its previously rendered decision, which still stands. The administrative reconsideration analysis

established by *Dep't of Agriculture v. Civil Service Commission*, 2007 Guam 21, therefore is not applicable, and Defendant's arguments that the GALC did not comply with it are inapposite.

## V. Estoppel

The Defendants argue that the doctrine of estoppel should bar the Government from pursuing this case. However, this case is sharply distinct from *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973), relied upon by the Defendants. In *Lazy, id.* at 987, a federal employee gave advice to a business as to how to reorganize itself to take best advantage of available federal funds. The business acted on the federal employee's advice and successfully secured payments of federal funds. Subsequently, an administrative decision found that, the federal employee's advice ad been erroneous and the payments of federal funds had been improper. The federal government was nonetheless estopped from recovering the funds on the basis of the federal employee's representations to the business.

The situation in *Lazy, id.*, was quite different than what we have in this case, which involves an allegation of an affirmative act of deception by the Defendants, not the mere passive reliance on advice from a government employee. A party that stands accused of inducing another to assent via deception cannot use the other's fraudulently procured assent as a shield; to allow so would be to allow estoppel to act as an absolute bar against any recovery by any fraud victim. Because of the allegation of fraud in this case, the Court rejects the analogy to *Lazy, id.*, and rejects the Defendants' estoppel argument.

## VI. Reformation

The Court now proceeds to examine the sufficiency of the evidence to support summary judgment on the central issue of this case – whether there was fraud or unilateral mistake tainting the execution of the conditional deed such that reformation of the deed is justified.

A. Unilateral Mistake

The Defendants emphasize the testimony of Mark Charfauros, the GALC commissioner who made the motion embodying the GALC's oral decision at the September 20, 2006 GALC hearing. Mr. Charfauros testifies via declaration that his intent in making the motion was to require Probate Court approval of the extinguishment of the Estate's future claims, and not to require a Superior Court adjudication of the merits of the ancestral lands claim. It is worth noting that the Government has introduced evidence suggesting that at least three of the other commissioners, Maria Cruz, Ronald Laguana, and Anita Orlino, had different understandings of the meaning of Mr. Charfauros's motion.

However, this is beside the point. Mr. Charfauros's subjective intent on making the motion is irrelevant, as is the subjective intent of any individual commissioner. The question is not what thoughts were in Mr. Charfauros's head when he made the motion; the question is the objective meaning of the words of the GALC's oral decision. The fundamental legal principle that an individual's intent should be inferred objectively rather than subjectively is applicable here. The law is not concerned with an individual's private, unexpressed intent, which is undeterminable except through that individual's own inherently unreliable testimony. The objectively determinable outward indicia of intention are the legally relevant points.

Here, what controls here is the plain meaning of the language of Mr. Charfauros's oral pronouncement. Mr. Charfauros's words were that the Defendants would be "going to the court proceedings to review this claim." Mr. Charfauros explicitly stated that "the court will make the final judgment on the claim." He further stated that "if the Court comes back that says, that you have absolutely no claim to this property, this property comes right back into the inventory of

the Ancestral Lands Commission," and again that "if the Court sees fit that this claim is invalid, this property would come back to the inventory of the Ancestral Lands Commission."

Regardless of what thoughts might have been in Mr. Charfauros's mind when he spoke these words, the meaning of the words themselves is clear. Those words directed the Defendants to obtain a Court ruling on the validity of their ancestral claim. Those words were voted on by the GALC. The Court therefore concludes that the GALC intended the deeded transfer of property to the Defendants to be conditioned upon a Court ruling affirming the validity of the Defendants' ancestral claim. Mr. Charfauros's affidavit is not sufficient to create a genuine dispute as to the GALC's intent.

The language of the deed condition, drafted by the Defendants' attorneys, provided for a probate court to "approve" the Defendants' "receipt" of the property. The distinction between a "probate court" and a court of general jurisdiction, competent to adjudicate the validity of the Defendants' ancestral claim – *see Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 17 – was clear to the Defendants' attorneys, or should have been so in the exercise of reasonable diligence. Thus, the Defendants' attorneys knew that the language of the deed condition, as drafted, did not accurately reflect the GALC's decision.

The Defendants point to their attorney Louie Yanza's contacts with Joey Leon Guerrero, a land agent employed by the GALC, during which Mr. Leon Guerrero did not object to language of the condition as drafted by Mr. Yanza. The Court rejects the Defendants' characterization of Mr. Yanza's contacts with Mr. Leon Guerrero as "extensive correspondence and discussion...to make sure that the Deed provision was crafted exactly as the GALC intended." *See* Defendants' Opposition to Plaintiff's Motion for Summary Judgment, 17. From Mr. Yanza's declaration, it appears that these contacts consisted of three phone calls over the

course of two weeks, with no indication that the language of the condition was discussed. Further, Mr. Leon Guerrero is a land agent whose professional expertise could not have been expected to include the vagaries of probate court jurisdiction. Mr. Yanza's declaration reflects that the subject matter of his discussions with Mr. Leon Guerrero was the property description. Mr. Leon Guerrero's job, as a land agent, was ensuring that the deed clearly and accurately described the lots to be transferred. He is not a lawyer. In light of his professional role, his approval of the deed cannot reasonably be understood as assent to the operative legal language of the deed condition relevant to the issue here.

It appears to the Court that the GALC's Final Written Decision and Order was also drafted by the Defendants' attorneys, and that its language was taken from that of the already-finalized deed condition, rather than vice versa. The D&O fails to reflect fully the GALC's decision as enunciated in open hearing. In light of these considerations, the Court does not find the D&O to be evidence sufficient to raise a genuine dispute as to the GALC's intent.

Indeed, none of the evidence before the Court supports any genuine dispute of the fact that the conditional deed did not express the true intentions of the GALC, that this deficiency was due to the unilateral mistake of the GALC in approving and executing deed language not accurately reflecting its oral decision, and that the Defendants knew or should have known at the time of the execution of the deed that its language did not accurately reflect the GALC's oral decision. The GALC's execution of the deed as drafted by the Defendants' attorneys thus constitutes a unilateral mistake of which the Defendants availed themselves with knowledge and for their own benefit. Accordingly, the Government is entitled, as a matter of law, to reformation of the deed language.

//

## VII. Disposition

The Government has proposed no language to replace the defective terms of the deed, and the Court has come to understand the difficulty of encapsulating the GALC's intent in a deed condition. The GALC essentially was attempting to certify the question of the validity of the Defendants' ancestral claim to the Superior Court, and to condition the deed on a Superior Court ruling favorable to the Defendants. The remaining counts of the Government's complaint – declaratory judgment, quiet title, and constructive trust – all hinge on a determination of the validity of the Defendants' ancestral claim. The Government asks this Court to proceed to make this determination, but offers no statutory authority for the Court's jurisdiction over this question, which it appears to the Court is actually within the exclusive jurisdiction of the GALC. The Court has searched in vain for any statutory provision, in the GALC's enabling legislation or elsewhere, authorizing certification of a question in the manner the GALC intended. Accordingly, the Court must conclude that it lacks subject matter jurisdiction over this question, and dismiss the remaining claims. *See* GRCP 12(h)(3).

It appears to the Court that the proper path toward resolving this question is for the GALC itself to hold further proceedings and to make an explicit ruling on the validity of the Defendants' ancestral claim. The Court acknowledges the GALC's strong and explicitly expressed preference not to have to reopen hearing on the merits of this difficult claim, but, as the GALC has exclusive jurisdiction over the subject matter of the claim, it appears to the Court that this is the only way. Without intending any intrusion on the GALC's authority to conduct its proceedings on this question in whatever manner it sees fit, the Court respectfully suggests that the GALC develop a record of its proceedings in a manner that will streamline review on appeal. In particular, a substantial written decision with detailed findings and discussion and

analysis of the evidence would seem to be appropriate in this vigorously contested case, which appears destined to come again before a Court in some form or another before it is finally put to rest.

## CONCLUSION

For the reasons set forth above, the Court finds that summary judgment in favor of the Government is appropriate on the issue of reformation. Accordingly, the Government's Motion for Summary Judgment is **GRANTED** in part, and the Defendants' Cross-Motion for Summary Judgment is **DENIED** in part.

The remaining counts of the complaint are **DISMISSED** for lack of subject matter jurisdiction, and the question of the validity of the Defendants' ancestral claim is **REMANDED** to the GALC for further proceedings.

SEP 3 0 2013

**IT IS SO ORDERED** this _____ day of September, 2013.

HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

SEP 3 0 2013

Benny C. Cruz
Deputy Clerk, Superior Court of Guam